UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN DESSERT CORP.,
a Michigan corporation,

    Plaintiff,

v.                                                   Case No. 06-15726

BALDWIN RICHARDSON FOODS, INC.,       HONORABLE AVERN COHN
an Illinois corporation,

    Defendant.

_____/

**MEMORANDUM AND ORDER STAYING DEFENDANT'S MOTION TO DISMISS[1]**

I.  Introduction

This is a contract case.  Plaintiff Michigan Dessert Corporation ("Michigan Dessert"), a Michigan food product supply company, is suing Defendant Baldwin Richardson Foods Co. ("Baldwin") for breach of contract, intentional interference with business relationship and defamation.  As will be explained, Baldwin first sued Michigan Dessert over their relationship in a case which is pending in United States District Court for the Northern District of Illinois

Before the Court is Baldwin's motion to dismiss.  Specifically, it says that (1) the complaint must be dismissed because it raises compulsory counterclaims that must be raised in the pending Illinois action, (2) personal jurisdiction is lacking, (3) the complaint

---

[1]The Court originally scheduled this matter for hearing.  Upon review of the parties' papers, however, the Court finds that oral argument is not necessary.  See E.D. Mich. LR 7.1(e)(2).

fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), or (4) the complaint fails to satisfy the jurisdictional requirement because the amount in controversy is not met.  For the reasons that follow, the motion is STAYED pending resolution of the parties' motions filed in the Northern District of Illinois.  Although the Court is staying the motion, this memorandum reflects the Court's current view of the complaint in light of Baldwin's arguments.

## II.  Background

The facts relevant to the instant motion follow.

### A.

Michigan Dessert is a Michigan corporation that manufactures and produces components to be used in food products for sale.

In March 2006, Michigan Dessert discussed the formulation of an apple pie sauce with TGI Friday's ("Friday's") restaurant chain, owned by Carlson Restaurants Worldwide ("CRWW"), in Dallas, Texas.

By April of 2006, Friday's agreed to purchase the sauce and identified a company which Michigan Dessert would send its mix for final blending before it was sent to the restaurants themselves - that company was Baldwin.  All critical negotiations regarding contract terms occurred between Michigan Dessert and Friday's.

In May 2006, Baldwin sent an email to Michigan Dessert attaching a purchase order and boilerplate additional terms that contained a forum selection clause.  Michigan Dessert sent Baldwin a purchase order receipt confirmation stating that "some customers have been attaching a list of revised or additional terms to their purchase orders that we do not automatically accept."

In June 2006, Baldwin received its first shipment of the product from Michigan Dessert and notified it that it had found debris and contamination in the product. Michigan Dessert sent Baldwin a second shipment which also contained debris. Baldwin refused to pay for the product and informed Friday's that there were problems with Michigan Dessert's product and/or packaging. As a result, Friday's terminated its orders with Michigan Dessert.

B.

On November 13, 2006, Baldwin sued Michigan Dessert in Illinois state court for breach of contract, breach of the express warranties, and breach of the implied warranties of merchantability and fitness for a particular purpose.

On December 12, 2006, Michigan Dessert removed the case to federal court in the Northern District of Illinois on the grounds of complete diversity and claimed that the amount in controversy exceeded $75,000.

On December 18, 2006, Michigan Dessert filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Eastern District of Michigan. On January 10, 2007, Baldwin filed a motion to remand the matter back to state court. Both motions are pending in the Northern District of Illinois.[2]

Two weeks after filing a removal in the Illinois action, Michigan Dessert filed this case on December 26, 2006. Michigan Dessert claims breach of contract, intentional interference with business relationship and defamation.

Baldwin then filed the instant motion to dismiss.

---

[2]According to Baldwin, briefing on the motions was to be completed as of February 1, 2007.

III.  Analysis

A.  Compulsory Counterclaim

Baldwin first says that the complaint be dismissed because it constitutes a compulsory counterclaim that must be brought in the pending Illinois action.  Fed. R. Civ. P. 13(a) states in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Baldwin says that Michigan Dessert's complaint arises out of the identical facts in the pending Illinois action and involves the same transaction or occurrence.  Therefore, Michigan Dessert's claim must be raised in the Illinois action.  Michigan Dessert responds that Rule 13(a) is inapplicable here because it has not filed a pleading in the Illinois case and therefore, is entitled to assert its claim against Baldwin in this court.

Rule 13(a) specifically states that the compulsory counterclaim must be set forth at the time of serving the pleading.  In U.S. v. Snider, D.O., 779 F.2d 1151, 1157 (6th Cir. 1985), the Court of Appeals for the Sixth Circuit held that "Rule 13(a) only requires a compulsory counterclaim if the party who desires to assert a claim has served a pleading."  The court further stated "[a] motion to dismiss pursuant to Rule 12(b) . . . is not a pleading as defined in Rule 7" and ". . . where the rules do not require a pleading . . . because of pending motions . . . the compulsory counterclaim requirement of Rule 13(a) is inapplicable.  Id.  See also Bluegrass Hosiery, Inc. v. Speizman Industries, Inc.,

4

214 F.3d 770 (6th Cir. 2000) (holding that the plaintiff's claims were not counterclaims since a pleading was not filed in the prior action).

Instead of filing a responsive pleading, however, Michigan Dessert filed a motion to dismiss or, in the alternative, to transfer venue to the Eastern District of Michigan. Since these motions are still pending, Rule 13(a) is inapplicable at this time. As such, the complaint cannot be dismissed on this ground. If, however, the district court in Illinois denies Michigan Dessert's motion, then the issue may be ripe for review.

### B. Personal Jurisdiction

Baldwin next says that the complaint be dismissed for lack of personal jurisdiction because it has not availed itself of the jurisdiction of Michigan. Baldwin says that all contract negotiations occurred between Friday's and Michigan Dessert. Baldwin's says that it's only contact was the purchase order sent to Michigan Dessert and even that contact provided a forum selection clause submitting to the jurisdiction of Illinois courts. Michigan Dessert argues that Baldwin's purchase order was a transaction of business in the forum state and that it did not accept the terms of the forum selection clause on the back.

A federal court sitting in a diversity action must look to the law of the forum state to determine the district court's "in personam reach." LAK, Inc. v. Deer Creek Enterprises, 885 F.2d 1293, 1298 (6th Cir. 1989) (quoting Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 376 n.2 (6th Cir. 1968)); Pittock v. Otis Elevator Co., 8 F.3d 325 (6th Cir. 1993). In determining whether it is proper to exercise personal jurisdiction over a defendant, the court must determine whether the defendant's conduct

falls within a provision of a Michigan long-arm statute and whether the exercise of jurisdiction comports with due process.  Green v. Wilson, 455 Mich. 342, 351 (1997); Aaronson v. Lindsay & Hauer Int'l Ltd., 235 Mich. App. 259, 262 (1999).  Long-arm statutes delineate the nature, character, and types of contacts that must exist to exercise personal jurisdiction.  Green, supra at 348.  Due process restricts permissible long-arm jurisdiction by defining the quality of contacts necessary to justify the exercise of personal jurisdiction over a defendant.  Id.  Because Michigan's long-arm statute is co-extensive with the constitutional limits of due process, the question of personal jurisdiction is determined by the minimum contacts test established in International Shoe Co. v. Washington, 326 U.S. 310 (1945), which requires three factors that must be met before it will exercise personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374 (6th Cir. 1968).

Here, Baldwin sent emails to Michigan Dessert at its Michigan office attaching a purchase order request for Caramel Dessert Sauce.  The product was made in Michigan and sent directly from Michigan to Baldwin's facility in New York.  Also, invoices were sent from Michigan to Baldwin.  Since the purchase order was sent on Baldwin's own initiative, Baldwin purposely availed itself of the jurisdiction of Michigan.  Thus, the complaint cannot be dismissed on these grounds.

### C.  Failure to State a Claim

Next, Baldwin argues that Michigan Dessert's complaint fails to state valid causes of action under Michigan law. Baldwin argues that Michigan's economic loss doctrine precludes an action in tort and that Michigan Dessert has failed to set forth sufficient facts to establish its claims of intentional interference with a business relationship and defamation.

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true. Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977). "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "The complaint should not be dismissed unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Computer Leasco v. Volvo White Truck Corp., 820 F. Supp. 326, 332 (E.D. Mich. 1992)(citing Conley v. Gibson, 335 U.S. 41, 45-46 (1957)).

Baldwin first argues that the Michigan economic loss doctrine precludes Michigan Dessert's action. The doctrine was described in Sullivan Industries, Inc., v. Double Seal Glass Co., Inc., 192 Mich. App. 333, 339 (1992)(citing McGhee v. GMC Truck & Coach Division, 98 Mich. App. 495, 505 (1980)), as follows:

> The economic-loss doctrine is a judicially created doctrine that bars all tort remedies where the suit is between an aggrieved buyer and a nonperformance seller, the injury consists of damage to the goods themselves, and the only losses alleged are economic.

7

The Michigan Supreme Court formally adopted the doctrine in <u>Neibarger v. Universal Coop, Inc</u>., 439 Mich. 512 (1992), where it explained:

> [w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

Baldwin argues that the economic loss doctrine precludes Michigan Dessert's tort claims. The Court is not persuaded. Michigan Dessert correctly argues that the doctrine does not apply here because it only bars tort claims from an aggrieved buyer against a nonperformance seller. Here, Michigan Dessert is not the buyer but rather the seller. Baldwin has failed to show any authority that shows that the doctrine applies to both the buyer and the seller in a contract dispute. Thus, the complaint cannot be dismissed on this ground.

Baldwin also says that Michigan Dessert has failed to sufficiently plead intentional interference with business relationship and defamation.

The elements of intentional interference with a business relationship are as follows: (1) existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, (2) knowledge of the relationship or expectation of the relationship by the defendant, and (3) an intentional interference causing termination of the relationship or expectation, resulting in damages to the plaintiff. See <u>Blazer Foods, Inc v. Restaurant Properties, Inc</u>., 259 Mich. App. 241 (2003). A party who alleges "tortious interference with a business relationship must

8

allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual or business relationship of another." Feldman v. Green, 138 Mich. App. 360, 369 (1984). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." CMI Int'l, Inc v. Internet Int'l Corp, 251 Mich. App. 125, 131 (2002).

Here, Michigan Dessert only alleges that Baldwin "wrongfully" informed Friday's that there were problems with its product and/or packaging. Michigan Dessert does not allege that the product was not defective or uncontaminated. Because Michigan Dessert has not alleged sufficient facts supporting that Baldwin has engaged in wrongful conduct, it is not necessary to review whether Michigan Dessert had a valid business relationship with Friday's or the expectation of such a relationship. As such, this claim is subject to dismissal for failure to state a claim.

Baldwin also says that Michigan Dessert has failed to sufficiently plead defamation. The elements of a defamation claim are: (1) false and defamatory statement about the plaintiff, (2) an unprivileged communication to a third party, (3) fault by the publisher, which amounts to at least negligence, and (4) either actionability of the statement regardless of special harm or the existence of special harm because of the publication. Mitan v. Campbell, 474 Mich. 21 (2005). Defamation claims must be plead with specificity. See Royal Palace Homes, Inc v. Channel 7 of Detroit, Inc., 197 Mich. App. 48 (1992). Pleading with specificity requires the plaintiff to plead "who published the defamatory statement, when it was published, and most importantly, a plaintiff must identify the precise materially false statement published." Rouch v. Enquiere & News,

9

440 Mich. 238, 272-273 (1992).

Baldwin says that Michigan Dessert failed to state what the false and disparaging statements were, who made such statements, and when such statements were made. Michigan Dessert says that it specifically accuses Baldwin of making false statements regarding Michigan Dessert's product and/or packaging to Friday's.

The Court agrees with Baldwin. Michigan Dessert does not specify why those claims are false or that the product was not uncontaminated. As such, the claim is not sufficiently pled.

### D. Amount in Controversy

Next, Baldwin says that the complaint must be dismissed because the amount in controversy requirement has not been met. The amount in controversy is decided from the complaint itself unless it appears or it is shown that the amount stated in the complaint is not claimed in good faith. See Jones v. Knox Exploration Corporation, 2 F.3d 181, 182-83 (6th Cir. 1993).

Baldwin argues that if the Court dismisses the intentional interference with business relationship and defamation claims, then the remaining claim of breach of contract is $32,491.90 which is below the jurisdictional amount. Because the Court finds that those claims fail to state a claim, the complaint is subject to dismissal on this ground.

### IV. Conclusion

Both parties have spent a good deal of time litigating the motion. The problem which neither party appears to appreciate is the fact that there is a prior action pending between them in the Northern District of Illinois. Indeed, the Court is constrained to

observe that Michigan Dessert's complaint appears to be an attempt at forum shopping after Baldwin won the race to the courthouse by filing first in Illinois. Although Baldwin has presented some persuasive arguments in support of dismissal, the better course is to wait for the district court in Illinois to rule on the parties' pending motions and then see what becomes of the case here. The parties shall promptly advise the Court of the Illinois district court's decision on their pending motions.

    SO ORDERED.

                           s/Avern Cohn
                           AVERN COHN
                           UNITED STATES DISTRICT JUDGE

Dated: March 15, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 15, 2007, by electronic and/or ordinary mail.

                           s/Julie Owens
                           Case Manager, (313) 234-5160